In Re: Petition of City of Pittsburgh.

Argued May 2, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and JAMES, JJ.

*C. Elmer Bown,* and with him *Henry A. Jones,* for appellant.—There is no statutory authority for the assessment of special benefits for a sewer constructed for the joint use of two municipalities and a township: Shobert v. Bloomsburg, 74 Pa. Superior Ct. 246; College Avenue Bridge, 9 Pa. Dist. Rep. 15; Dormont Borough, 64 Pa. Superior Ct. 134.

*Benjamin L. Steinberg,* Assistant City Solicitor, and with him *Charles A. Waldschmidt,* City Solicitor, for appellee, cited: Ben Avon Borough v. Crawford, 64 Pa. Superior Ct. 163; Allshouse et ux. v. City of Pittsburgh, 91 Pa. Superior Ct. 275.

OPINION BY JAMES, J., October 2, 1933:

On March 22, 1930, the City of Pittsburgh, Mt. Oliver Borough and Baldwin Township entered into an agreement providing for the joint construction, maintenance and repair of a trunk sanitary sewer, the City of Pittsburgh to pay 63.7% of the cost, the

borough 25.5% and the township 10.8%. It was further provided that the City of Pittsburgh should let the contract for the construction of the trunk sanitary sewer and, upon completion thereof, the borough and township should each pay to the city the percentage of the total cost. Nowhere in the agreement is there any covenant or condition on the part of any of the contracting parties waiving their right to proceed by proper legal steps to recover special benefits from abutting properties under the provisions of the law.

On April 3, 1930, Ordinance No. 120 of the City of Pittsburgh was approved, which authorized the Mayor and Director of the Department of Public Works of the City of Pittsburgh to advertise for proposals and to award the contract or contracts for the construction of the trunk sanitary sewer, and specifically providing in Section 2 thereof that the costs, damages and expenses of the same shall be assessed against and collected from the properties specially benefited thereby.

Following the construction of the trunk sanitary sewer, viewers were appointed under the provisions of the Act of 1891, P. L. 75 and its supplements and amendments and the viewers filed their report setting forth that the total cost of the improvement was $132,-669.29 and assessing benefits to the amount of $11,729, among which were the following benefits assessed against appellants: E. E. Krebs, V-54, $130; F. Meyers, V-61, $80; Terminal Coal Co., V-76, $800; Terminal Coal Co., V-77, $2,500.

Exceptions were filed by appellants to the report of the viewers on the ground that their properties were situated in Baldwin Township; that the total cost of such joint trunk sewer, because the whole of the benefits therefrom was to properties situate in the township, was being defrayed by the township and paid out of general taxation to which appellants taxed in the township were contributing; that the Township of

Baldwin had not joined in the petition for viewers and there was no authority by law on the part of the City of Pittsburgh to assess benefits for such trunk sewer. These exceptions were dismissed and the report of the viewers confirmed, from which order the within appeal was taken.

As shown by the plan, the sewer in question is a trunk sanitary sewer extending along Becks Run Road, Parkwood Road and Bajo Street for a distance of about two miles, varying in diameter from 24 inches to 60 inches. Portions of it are under the sidewalk and portions in the cartway. Becks Run Road follows the course of Becks Run in a general way, but the courses of the run and road diverge at some places. The line between the city and Baldwin Township follows the center of the run for a considerable distance, but this line also diverges. At some places the side of the highway is the boundary line and at other places the boundary line leaves both the Run and the highway. Becks Run Road is principally in the City of Pittsburgh. Parts of it are in the township, however.

An examination of the engineer's drawings attached to the viewers' report, clearly discloses that the lands owned by the appellants are served by a portion or portions of the trunk sanitary sewer wholly within the limits and boundaries of the City of Pittsburgh. The property marked V-54 in the plan, owned by E. E. Krebs, has a corner of it within the city line, and is served by two laterals from the main sewer which lies wholly within the boundaries of the City of Pittsburgh. The property of F. Meyers, marked V-61, is served by a lateral connected to and with the main sewer and the said property has a corner within the line of the City of Pittsburgh. As to the boundaries of the Terminal Coal Co., V-76 and V-77, the engineer's plan shows that while both properties have large frontages on the sewer service line, the larger part of which is

in the township, portions of their frontages are within the boundaries of the City of Pittsburgh and are being served by lateral connections in the City of Pittsburgh.

Appellants strongly urge that there is no statutory authority for assessments of special benefits for a sewer constructed for the joint use of two municipalities and a township. The Acts of May 1, 1909, P. L. 306; June 15, 1911, P. L. 966; July 14, 1917, P. L. 840 and May 4, 1927, P. L. 519, authorize agreements between cities, townships and boroughs for the construction of a sewage system, trunk line sewers, under agreement with each other for construction and maintenance, but there is no provision in any of these Acts of Assembly which in any manner affects the rights of the several municipalities or contracting parties to proceed to levy assessments for benefits for the portions of the sewer system which lie within their respective communities.

The viewers were appointed under the provisions of the Act of May 16, 1891, P. L. 75, Sec. 1, as amended by the Act of June 12, 1893, P. L. 459, Sec. 1, and Sec. 1 of the Act of May 28, 1915, P. L. 573, wherein it provides that ''Every municipal corporation shall have power ...... to construct ...... sewers and drains in any street or alley, or through, or on, or over private property ...... On petition, viewers shall be appointed as provided in the first section of this act, who shall assess the costs and expenses of the sewer ...... upon the property benefited, according to benefits, if sufficient can be found, but, if not, then the deficiency, when finally ascertained shall be paid by the municipal corporation ......''

The Act of May 28, 1907, P. L. 287, provides: ''That whenever any ...... highway, entirely within the limits of any city ...... shall divide the said city ......from any other municipality or township...... the property on the side of said ...... highway, op-

posite the present line of said first-named municipality, ...... shall, for a depth of one hundred and fifty feet from said line, be assessed for any and all municipal improvements to or on the ...... highways on which the said property shall abut, in the manner provided by the Acts of Assembly for assessments of bene-fits and damages, as if the said property were entirely located within the limits of said first-named municipality ......"

In the recent case of Allshouse v. City of Pittsburgh, 91 Pa. Superior Ct. 275, it was held as follows: "A property which fronts on a city street for the depth of six feet, and thereafter extends into the limits of an adjoining borough for less than 100 feet, is liable as a whole for assessment for street paving in the municipality on which the property fronts. Such a case is within the spirit and purpose of the Act of May 28, 1907, P. L. 287, which provides that, when a street shall divide one municipality from another, the property on the side of the street opposite the present line of the first-named municipality shall, for the depth of 150 feet from said line, be assessed for any and all municipal improvements to or on the streets, alleys or highways on which the property shall abut."

In view of that decision, there is no question but that the assessment of benefits made against the appellants would be clearly legal if the sewer construction or improvement had been the individual improvement of the city and we are not convinced that because the construction was made with the joint arrangement between the city, borough and township, that the city loses the right to file its claim for that to which it would have been legally entitled if it had acted alone. The Acts of Assembly which permit a municipality and a township to enter into joint arrangements were undoubtedly enacted for the benefit and convenience of the several municipalities and were not intended to de-

prive any of the municipalities of the rights which they had when acting individually and not in concert.

Much stress is laid by appellants upon the fact that the agreement under which the sewer was constructed makes no provision for the assessment of benefits. There was no necessity for the general agreement to provide for the method of collection for the improvement; that was an individual act of each municipality. One may have desired to provide for the improvement out of the general revenue while the others may have provided for payment for the improvement by assessment by the per foot front rule or by assessment for benefits derived from the construction of the improvement. This was exclusively a matter for each municipality.

The court below held that the Act of May 25, 1923, P. L. 452, which provides, that cities, boroughs and incorporated towns (but not townships) are authorized to construct sanitary sewers and sewer pipes outside the cartway and curb lines of any street or highway, was legislative authority for the legality of the present assessments for benefits. Particular stress is laid by appellants upon the fact that as this Act of Assembly does not include townships, the Act does not apply. Appellants lose sight of the fact that the assessments in the present case are not made by the township but are made by the City of Pittsburgh for the construction of the sewer within the lines of the City of Pittsburgh against lands of the appellants, portions of which abut the line of the sanitary sewer. This Act must be read in pari materia with the Act of 1891 and its supplements. We are of the opinion that the Act of May 28, 1907, P. L. 287 and the above Act of May 25, 1923, P. L. 452 are full and complete authority for the legality of the assessment.

Appellants earnestly argue that the questions involved in the present appeal are decided by decisions

of this court in the case of Dormont Boro., 64 Pa. Superior Ct. 134, and Carlisle v. Welsh, 74 Pa. Superior Ct. 255.

In the Dormont case, the borough and county entered into an agreement for the pavement of a strip sixteen feet in width of the county road extending through the borough, and the borough provided for the pavement of both sides of the sixteen foot strip, but nothing on the record disclosed what were the limits on either side of the county road. The court held that there was no authority under the Act of May 11, 1911, P. L. 244, Section 18, for charging one-third of the cost of the paving in which the county was interested against abutting properties, but expressly held that the borough may impose the cost of the improvement on either side of the sixteen foot strip upon the abutting owners.

In Carlisle v. Welsh, supra, the assessment was not sustained because the borough by ordinance had failed to indicate that any part of the main sewer was to be assessed against abutting property owners. In the instant case, the city by ordinance had expressly declared that the costs, damages and expenses should be assessed against properties specially benefited.

Order affirmed.