## Millvale Borough's Petition et al.

Argued May 1, 1936; reargued October 5, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Frank W. Ittel,* with him *Lee C. Beatty* and *Richard W. Ahlers,* for appellants.

*John E. Winner,* for appellees.

OPINION BY PARKER, J., February 26, 1937:

This case comes to us on an appeal from an order of a court of common pleas dismissing exceptions to a viewers' report assessing benefits for the construction of a joint trunk sewer in two boroughs and two first class townships in the county of Allegheny.

The sewer in question empties into another sewer that the borough of Millvale had constructed at a former time and was intended to accommodate parts of the boroughs of Millvale and West View and parts of the townships of Shaler and Ross. While it was laid for the most part under public roads, streets, and alleys, it was necessary to cross some private properties. The four municipalities had entered into a contract dated May 10, 1932, ratified by the necessary ordinances, providing for the construction of a joint sewer, fixing the size and location of the sewer, and determining the shares of expense of construction to be borne by the respective municipalities. Millvale was to receive $25,000 for the use of the sewer it had theretofore constructed and was to furnish some engineering service. West View undertook to pay 36.74 per cent, Shaler 21.87 per cent, and Ross 41.39 per cent of the cost of construction beyond the Millvale sewer, the $25,000 paid to Millvale, and any damages awarded to property owners in those three municipalities irrespective of the location of such properties. The contract also provided for a division of the cost of maintenance and repairs.

In proceedings at No. 555 January Term, 1934, on a joint petition of the several municipalities, viewers were appointed to assess the damages and benefits occasioned by the improvement. To the report of those viewers these exceptions were filed. A short time earlier, at No. 1930 October Term, 1933, viewers were appointed on a like joint petition to determine the damages occasioned to private property by the construction

of the sewer over private properties. Both proceedings were referred to the same board of viewers and reports were made to court at the same time and were confirmed nisi on the same date.

The exceptions were based on four complaints: (1) that the court was without authority to entertain a joint petition from the four municipalities to have benefits and damages assessed against properties in the different municipalities in one proceeding; (2) that the appointment on separate petitions of the same board of viewers to assess the damages occasioned by the taking of private property and to assess the benefits and damages occasioned by the cost of construction was unlawful; (3) that private property in one municipality was assessed "for the benefit of another municipality without express statutory authority"; and (4) that the ordinances providing for the improvement were defective because they did not expressly provide for the assessment of any private property and did not specifically fix the method to be adopted for collecting the cost of improvement.

(1) We cannot discover any merit in the contention that the benefits in the four municipalities could not be assessed in one proceeding or that to do so would be fatal to the proceedings. "The First Class Township Law", Act June 24, 1931, P. L. 1206 (53 PS 19092), by §2440 (53 PS 19092-2440) provides that such townships may enter into agreements with municipalities or other townships "for the purpose of building sewers, including trunk line sewers." This was a reenactment of provisions in the Township Code of 1917. A similar provision is contained in the "General Borough Act" of May 4, 1927, P. L. 519, §2120 (53 PS 14301), later amended by Act April 4, 1935, P. L. 15. It is clear that the legislature by these acts contemplated that the construction of a trunk line sewer might be undertaken and pursued as one single undertaking

crossing the lines of the different boroughs or townships for they were authorized to make agreements so to do. In presenting a joint petition by all the municipalities affected and in disposing of the matter in one proceeding they were but pursuing to a conclusion what they were authorized to do.

The contract fixed the proportion of the total cost which should be paid by each borough. The viewers in their report took into account such division of costs and in no case was the total of the assessment against individual properties in any one municipality as much as the share which such municipality agreed to pay. That is to say, in each case a portion of the cost allocated to such municipality was placed upon the municipality as a whole. The result actually achieved when the report was filed was no different than if four separate petitions had been presented and four separate boards of viewers had acted independently of each other for the report segregated the assessments for the respective political subdivisions.

In *Petition of City of Pittsburgh,* 110 Pa. Superior Ct. 310, 168 A. 496, we upheld a separate petition involving the construction of a trunk sanitary sewer which affected the city of Pittsburgh and an adjoining borough and township. There the work was done under contract by the city of Pittsburgh and largely involved a sewer constructed on a street forming the boundary line between the city and the borough and township. The conclusions there reached are not inconsistent with our present conclusion. Four separate petitions might have been presented but it does not follow that it was not permissible to follow the course here pursued. In fact there is much to be said in favor of proceeding by one petition. As we shall later show, the legislature provided for the assessment of benefits in both boroughs and townships in the manner adopted here.

(2) It is next contended that it was fatal to these

proceedings that a previous petition had been presented asking for the appointment of viewers to assess damages for private property taken in the construction of the sewer and that viewers were so appointed. However, the court appointed the same board to act as viewers and in both proceedings the reports were made and confirmed nisi at the same time. Certainly when these two petitions were presented the court might have consolidated them. The result attained was no different than if the court had so done and proceeded as if there was one petition. Our attention has not been called to, and we have not been able to discover, any fact which would indicate that the parties against whom benefits have been assessed have been deprived of any right or harmed in any respect by the presentation of separate petitions or by the manner in which the proceedings were conducted. The objection is extremely technical and we think the court below properly dismissed the exceptions covering this branch of the case.

(3) It is next urged that the report should be set aside because private property in one municipality has been assessed for the benefit of another municipality without express statutory authority. In the first place, the factual premise is without support. We do not understand that in the case of any of these properties assessed with benefits such assessments were for the benefit of any other municipality. Just as in any case where assessments are made on the basis of benefits, the particular property is assessed for the special benefits received by such property or its owner. That property is charged with no more than the benefits that accrue to it. If there are not enough special benefits to meet the cost of the improvement the excess must then be borne by the municipality. It makes no difference that the improvement involves four different municipal subdivisions provided the property is on the line of the improvement. It happens in this case that

the improvement extends into more than one municipality and that in such case the territory covered involves four political subdivisions in place of one, but in each case the special assessment is laid upon the same principle. The legislature authorized the work to be done as a joint undertaking and also provided that the municipalities should enter into an agreement for such improvement which included the right to determine the proportion of expense that should be borne by each.

No individual property was assessed with its share of the total cost, for such property did not receive benefits to that extent. The total cost of the improvement was $165,394.76, but the total of all benefits assessed against individual properties in all four municipalities is only $25,838.40, the balance being placed on the municipalities in accord with the agreement. Each property has been assessed for special benefits and no more.

None of the exceptants is affected by the fact that the boroughs agreed to divide the amounts of special benefits received in the same proportion to which they contributed to the cost of the whole. That provision in the contract was a matter which involved one of the elements which was necessarily considered by the parties when they agreed upon the division of cost.

Both the "First Class Township Law" and the "General Borough Act" in our opinion are sufficient authority for the making of the assessments in the manner here adopted. Article XXIV of the "First Class Township Law" (53 PS 19092-2401, et seq.) deals with sewers and drains and makes provision for the assessment of benefits for the construction of sewers. Section 2420 is a part of the same article and the later section is to be read with the earlier section. The portion of the trunk line sewer in any particular municipal subdivision is a part of the general system of sewers

in that subdivision. Consequently, when a joint trunk line sewer was constructed in a first class township, the portion of the trunk line within that township became a part of the general system of that subdivision and the provisions for assessing benefits were applicable. A similar authorization is contained in the "General Borough Act" (53 PS 14231, et seq.). In our opinion these acts are adequate authority for the assessment of private property even though this trunk line sewer was constructed as a joint undertaking.

(4) Finally, it is suggested that the various borough ordinances did not provide for the assessment of any private property or fix a method of making such assessment. We are at a loss to understand the basis of this assertion for the ordinances adopted by West View, Shaler and Ross do provide for the assessment of benefits. Each of the three municipalities, in addition to an ordinance approving the joint contract which clearly contemplated individual assessments, adopted an additional ordinance providing that the cost of the improvement in such municipalities should be borne by the assessment, levy and collection of damages and benefits "in accordance with the provisions of the Act of Assembly governing same." Under the statute the cost might be provided for by general taxation or by assessments made by the foot front rule or on the basis of benefits. The language used could not possibly apply to an assessment by the foot front rule. While the ordinance passed by the borough of Millvale is not as clear as it should be, we think it is sufficient to indicate an intention to adopt the plan of assessment of benefits on individual properties. In any event no benefits have been assessed on properties in Millvale borough, and Millvale borough was not by the terms of the contract to bear any expense in making the extension, except some engineering expense connected with that part of the sewer in Millvale. It is therefore

unimportant for present purposes that the Millvale ordinance is not as clear as it should be. It is a basic and fundamental prerequisite to the levying of an assessment that the municipal authorities signify their intention to make abutting property owners contribute to the cost of construction to the extent that such owners are benefited by the construction: *Carlisle v. Welsh,* 74 Pa. Superior Ct. 255, 258. The authorities did by ordinances indicate such intention.

We are all of the opinion that the court below correctly held that the exceptions should be dismissed.

The order of the court below is affirmed at the cost of the appellants.